UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MURREL WAYNE VAILES, III,<br><br>                Petitioner,<br><br>v.<br><br>L. LUNDY, Acting Warden,<br><br>                Respondent.[1] | Case No.:  22-cv-00456-AJB-DDL<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

Murrel Wayne Vailes, III ("Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254. (*See* Doc. Nos. 1, 4.) Petitioner challenges his 2019 conviction in San Diego County Superior Court case number SCD270590 of four counts of robbery, two counts of assault with a semi-automatic firearm, one count of possession of a firearm by a felon, one count

---

[1] In the Petition, Petitioner named both Warden R.C. Johnson and the Attorney General as Respondents. (*See* Doc. No. 1 at 1.) In the Answer, Respondent correctly observes "the warden of the facility in which the petitioner is incarcerated" is the proper respondent to this action and requests the Attorney General be removed as a respondent. (Doc. No. 9 at 1 (quoting *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) and citing Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. § 2254 *et seq.*).) The Court additionally notes that Leanna Lundy currently serves as the Acting Warden of the California State Prison, Los Angeles County, and is thus Respondent to this federal habeas action. Accordingly, the Court **DIRECTS** the Clerk to remove the Attorney General as Respondent to this habeas action and reflect the substitution of Leanna Lundy as sole Respondent in the case caption.

of possession of a firearm by a person prohibited from firearm possession, along with sentencing enhancements tied to specific counts, as well as enhancements due to commission of the offenses while out on bail and due to prior convictions, and his resultant sentence to a determinate prison term of 18 years plus an indeterminate prison term of 129 years to life in prison. (*See* Doc. No. 1 at 1–2; *see also* Doc. Nos. 10-1 & 10-2 (collectively, "Lodgment No. 1") at 138–41, 435–38; *see also* Doc. No. 10-14 ("Lodgment No. 8") at 3.)

Petitioner alleges his federal constitutional rights were violated because: (1) his excessive sentence constitutes cruel and unusual punishment, (2) his "de facto" life sentence without the possibility of parole violates equal protection, and (3) defense counsel provided ineffective assistance of counsel at sentencing for failing to argue mitigating factors and that his excessive sentence violated equal protection and constituted cruel and unusual punishment. (Doc. No. 1 at 6–19.)

Respondent has filed an Answer and lodged the trial record. (Doc. Nos. 9–10.) Respondent maintains habeas relief is unavailable because: (1) while the Petition should not be stayed and should instead be dismissed as a mixed petition because Petitioner failed to exhaust his state remedies for Claim 3, Claim 3 may alternately be denied as meritless notwithstanding the failure to exhaust; (2) Claims 1–3 are procedurally barred; (3) to the extent Petitioner asserts state law violations, the claims are not cognizable on federal habeas review; and (4) the state court rejection of Claims 1–2 are neither contrary to nor an unreasonable application of clearly established federal law and the state court factual findings were reasonable. (Doc. No. 9 at 2–3.) Despite the Court providing the opportunity to do so, (*see* Doc. Nos. 5, 8), Petitioner did not file a Traverse (*see generally* Docket).

## I.   FACTUAL BACKGROUND

The following is taken from the state appellate court opinion affirming the judgment in *People v. Vailes*, D076125 (Cal. Ct. App. Dec. 15, 2020). (*See* Lodgment No. 8.) The state court factual findings are presumptively correct and entitled to deference in these proceedings. *See Sumner v. Mata*, 449 U.S. 539, 545–47 (1981).

///

In January 2017, Vailes committed several robberies, two of them at gunpoint and two accompanied by another perpetrator.  Given the nature of his appellate claims, we need only briefly summarize the facts of the offenses.

*Counts 1 and 2*

On January 12, 2017, two men took a wallet, cell phones and money from A.H. and his wife after purporting to be prospective purchasers of a phone A.H. was selling.  One of the men waved a black semiautomatic handgun at A.H., whose young children were with him and his wife at the time.  A.H. was unable to see the men's faces clearly.

Police reviewed records of the online platform on which the sales transactions were to occur and found Vailes's accounts for them, in which he used a pseudonym.

*Counts 3, 4, 5, 7 and 8*

The next day, Vailes robbed J.A. and J.A.'s then-girlfriend J.K. at gunpoint, taking a pair of shoes J.A. was selling and a jacket.

J.A. and J.K. later spoke with family members about the incident, leading them to find images of Vailes on social media.  J.K. befriended Vailes on Snapchat, where she and J.A. saw a photograph and video of Vailes holding the same gun used in the robbery and wearing the jacket and shoes he took from J.A.

*Count 6*

Two days later, Vailes snatched a cell phone, box and duffle bag from A.P. while A.P. was showing the phone to him for purposes of sale.  A.P. chased after Vailes but stopped when another man with a gun jumped in front of him and pointed it at A.P.'s chest.

*Post Arrest Conduct and* Romero *Motion*

Following Vailes's arrest, an investigator listened in on over 1,000 phone calls Vailes made to family and friends.  Two hours after his arrest, Vailes took part in a call regarding deleting his Facebook page.  Vailes discussed deleting various photographs and using code words about purchasing an extended magazine for a firearm.  Based on some of the phone

calls, the investigator became concerned that Vailes was arranging to retaliate against the victims in this case.

During his sentencing hearing Vailes's counsel moved to strike Vailes's prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), pointing out they were committed when he was under 18 years old, and the court could still impose a lengthy sentence if all strikes were stricken. Counsel argued such relief was warranted because Vailes had never received adequate treatment for his intellectual disability and behavior issues. Counsel sought a sentence that would allow Vailes to earn the ability to get out of custody, observing Vailes did not fire shots, there was no evidence the guns were loaded, and it was unclear in two instances whether Vailes used a gun.

The prosecutor pointed out that in jail calls Vailes had used code words to discuss firearms and gave green lights from custody in retaliation for a shooting. He argued Vailes's crimes were "extremely premeditated" and not spur-of-the-moment, but took place over several days in anticipation of using force and violence against multiple victims. The prosecutor pointed out Vailes's Facebook page showed he was a leader in the crimes and that he had been convicted of three prior robberies, so he knew the consequences but made a deliberate decision to commit more robberies with a gun. The prosecutor argued that Vailes had opportunities and warning, but "every time he escalates with violent behavior" and the only mitigation for him was his date of birth.

The court denied the motion and declined to strike any strikes "in light of the nature and circumstances of this case and (Vailes's) background." The court ruled imposition of the Three Strikes sentence was just and warranted, pointing out Vailes had committed 10 separate robberies before the current offenses, which he committed while on bail pending sentencing for his 2016 offenses. It found Vailes's current crimes were "well-planned, well-reasoned sophisticated crimes," as he found victims through the internet, created fake accounts, and lured the victims to a location to more easily rob them. The court found its sentence was "necessary to protect society, punish the defendant, deter others from criminal conduct by demonstrating consequences, and to prevent the defendant (from) committing new crime."

(Lodgment No. 8 at 3–5.)

///

///

## II.  PROCEDURAL HISTORY

On March 14, 2019, following trial, the jury found Petitioner guilty of four counts of robbery in violation of California Penal Code § 211 (counts 1–2 and 5–6), two counts of assault with a semi-automatic firearm in violation of Cal. Penal Code § 245(b) (counts 3–4), one count of possession of a firearm by a felon in violation of Cal. Penal Code § 29800(a)(1) (count 7), one count of possession of a firearm by a person prohibited from possessing a firearm in violation of Cal. Penal Code § 29820 (count 8), and found true that Petitioner was a principle in the commission of two of the robberies (counts 1 and 2) within the meaning of Cal. Penal Code § 12022(a)(1), personally used a handgun in both of the assaults (counts 3 and 4) within the meaning of Cal. Penal Code § 12022.5(a), personally and intentionally used a handgun in one of the robberies (count 5) within the meaning of Cal. Penal Code § 12022.53(b), and was armed with a handgun in the commission of one of the robberies (count 6) within the meaning of Cal. Penal Code § 12022(a)(1). (Lodgment No. 1 at 518–37.) Because Petitioner waived jury trial on the bail enhancement allegations and the alleged priors, after trial, the trial court found true the allegations Petitioner committed the offenses in counts 1–8 while out on bail and released from custody within the meaning of Cal. Penal Code § 12022.1(b) and found true that Petitioner had one serious felony prior within the meaning of Cal. Penal Code § 667(a)(1) and three strike priors within the meaning of Cal. Penal Code §§ 667(b)–(i) and 1170.12. (*Id.* at 518–19.) On June 10, 2019, Petitioner was sentenced to a determinate prison term of 18 years in prison plus an indeterminate prison term of 129 years to life in prison. (*Id.* at 435–38, 538–44; *see also* Lodgment No. 8 at 3.)

Petitioner appealed to the California Court of Appeal, raising Claims 1–3 presented here, along with a request to correct an error in the abstract of judgment. (Doc. No. 10-11.) The state appellate court directed the trial court to amend the abstract of judgment to reflect the correct sentence but otherwise affirmed the judgment in all other respects in a reasoned opinion issued on December 15, 2020. (*See* Lodgment No. 8.) Petitioner thereafter filed a petition for review in the California Supreme Court raising only Claims 1 and 2, which on

February 17, 2021, the state supreme court denied in an order which stated in full: "The petition for review is denied." (Doc. Nos. 10-15, 10-16.)

On April 4, 2022, Petitioner filed his federal Petition, the operative pleading in this action. (Doc. No. 1.) After the Court initially dismissed the action for failure to satisfy the filing fee requirement, Petitioner thereafter satisfied the filing fee requirement by qualifying to proceed in forma pauperis. (*See* Doc. Nos. 2–4.) On September 21, 2022, Respondent filed an Answer and lodged the state court record. (Doc. Nos. 9–10.) Despite the Court providing the opportunity to do so, (*see* Doc. Nos. 5, 8), Petitioner has not filed a Traverse.

## III.   PETITIONER'S CLAIMS

(1) Petitioner's sentence to life in prison without a realistic chance of parole is excessive in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, particularly in view of Petitioner's age, maturity, mental capacity, and his mental and emotional state at the time of the offenses. (Doc. No. 1 at 6–10.)

(2) Petitioner's "de facto" life sentence without the possibility of parole violates the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 11–15.)

(3) Defense counsel provided ineffective assistance of counsel at sentencing in violation of the Sixth Amendment for failing to argue factors in mitigation and that Petitioner's excessive sentence violated equal protection and constituted cruel and unusual punishment in violation of the state and federal constitutions. (*Id.* at 12, 16–19.)

## IV.   STANDARD OF REVIEW

A state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits, unless it: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338–39 (2006) (quoting 28 U.S.C. § 2254(e)(1)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102.

Where it is unclear what standard of review applies, de novo review of that claim, that is, review without AEDPA deference, may be appropriate provided the claim warrants denial. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).")

Even under a de novo review, a habeas court's consideration of a petitioner's claims can be further informed by any discussion or analysis offered by the state court. *See Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) (holding that even under de novo review, reasoning of state court remains relevant to reviewing court's consideration of whether a constitutional violation occurred).

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)). Still, "[p]risoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## V.   DISCUSSION

Respondent maintains habeas relief is unavailable because: (1) while the Petition should not be stayed and should instead be dismissed as a mixed petition because Petitioner failed to exhaust his state remedies for Claim 3, Claim 3 may alternately be denied as meritless notwithstanding the failure to exhaust; (2) Claims 1–3 are procedurally barred; (3) to the extent Petitioner claims state law violations, the claims are not cognizable on federal habeas review; and (4) the state court rejection of Claims 1–2 are neither contrary to nor an unreasonable application of clearly established federal law and the state court factual findings were reasonable. (Doc. No. 9 at 2–3.)

Petitioner raised Claims 1 and 2 in a petition for review in the California Supreme Court which the state court denied without a statement of reasoning. (*See* Doc. Nos. 10-15, 10-16.) The United States Supreme Court has repeatedly stated a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.") As such, in the absence of record evidence or argument seeking to rebut this presumption, the Court will "look through" the California Supreme Court's summary

8

denials of Claim 1 and 2 on direct appeal to the reasoned decision issued by the California Court of Appeal with respect to Claims 1 and 2. *See Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

### A.    Procedural Matters

Respondent specifically asserts Claims 1 and 2 are procedurally barred under California's contemporaneous objection bar because the state appellate court found both claims forfeited for failure to object in the trial proceedings and Claim 3 is unexhausted but procedurally defaulted due to technical exhaustion. (Doc. No. 9-1 at 10–17.) The Court will first address the contemporaneous objection bar matter with respect to Claims 1 and 2 and will thereafter separately address the issue of exhaustion and technical exhaustion with respect to Claim 3.

### 1.    Procedural Default

A federal claim is procedurally defaulted when the state court's rejection "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "State rules count as 'adequate' if they are 'firmly established and regularly followed.'" *Johnson v. Lee*, 578 U.S. 605, 606 (2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001) (citing *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983) and *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

Respondent maintains the state appellate court found Claims 1 and 2 were each forfeited because Petitioner failed to object to his sentence on the grounds of either cruel and unusual punishment (Claim 1) or equal protection (Claim 2) in the trial court and asserts this bar, California's contemporaneous objection rule, constitutes an adequate and independent procedural bar. (*See* Doc. No. 9-1 at 12, 14–15 (citing Lodgment No. 8 at 10

n.4, 17) (additional citations omitted).) The California Court of Appeal indeed found "the forfeiture rule applies to claims based on violations of fundamental constitutional rights and 'specifically in the context of sentencing . . . .'" (Lodgment No. 8 at 10 n.4 (citing *In re Seaton*, 34 Cal. 4th 193, 197–98 (2004)). The court further noted such a rule applied "where a defendant fails to contemporaneously object in the lower court that his sentence constitutes cruel and unusual punishment and also where a defendant fails to assert an equal protection violation." (*Id.* at 10 n.4 (citations omitted).) The state appellate court found both Claims 1 and 2 barred pursuant to the forfeiture rule based on Petitioner's failure to object to his sentence on cruel and unusual punishment or equal protection grounds during his sentencing proceedings in the trial court. (*See id.* at 10 n.4, 17.)

California's contemporaneous objection procedural bar has been found adequate to bar federal habeas review. *See Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002) ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence.") (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981)); *see also Wainwright v. Sykes*, 433 U.S. 72, 88 (1977) (recognizing contemporaneous objection rule as valid procedural bar to federal habeas review and noting utility of such a rule, in that "[a] contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding.") This procedural bar is also clearly independent, as it was applied well after the California Supreme Court's decision in *In re Robbins*, 18 Cal. 4th 770 (1998), after which the state supreme court indicated federal law would no longer be considered in its application of state procedural bars. *See, e.g.*, *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) ("The California Supreme Court has adopted in *Robbins* a stance from which it will now decline to consider federal law when deciding whether claims are procedurally defaulted.") (citing *Robbins*, 18 Cal. 4th at 811–12).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the

claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

While Petitioner did not file a Traverse and does not appear to specifically challenge the efficacy of the state court's application of procedural bars, Petitioner does raise a claim of ineffective assistance of counsel for failing to argue at sentencing that the excessive sentence imposed violated equal protection and constituted cruel and unusual punishment, as well as for allegedly failing to argue factors in mitigation. (*See generally* Claim 3.) An attorney's failure to preserve a claim for review may in some situations serve to establish cause. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("Although we have not identified with precision exactly what constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice.") (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).

Because engaging in a cause and prejudice analysis could prove protracted given Petitioner's claim of ineffective assistance of counsel and because analysis of the prejudice prong would necessarily require discussion of the merits, it appears simply addressing the merits provides a more expedient path because it is clear Claims 1 and 2 each fail on the merits under a de novo review independent of the outcome of any procedural default analysis. *See, e.g.*, *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")); *see also Thompkins*, 560 U.S. at 390 ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a

writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).") As such, the Court will address Claims 1 and 2 on the merits.

### 2. Exhaustion and Technical Exhaustion

Respondent contends the Petition should be dismissed because Petitioner failed to exhaust Claim 3 by presenting it in the California Supreme Court and alternatively argues the Petition may be denied on the merits because the unexhausted claim is meritless.[2] (Doc. No. 9-1 at 10–12.) Respondent relatedly contends Claim 3 is procedurally barred due to Petitioner's failure to exhaust the claim by presenting it to the state supreme court, and alternately asserts the claim is meritless under de novo review. (*Id.* at 17 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).)

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also* 28 U.S.C. § 2254(b) & (c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275. "In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)). To exhaust, the highest state court, here the California Supreme Court, must be provided an opportunity to rule on the merits of all claims to be brought in federal court. *See Rose v. Lundy*, 455 U.S. 509, 515 (1982); *see also O'Sullivan*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

---

[2] Respondent also contends "[t]his Court should not stay the Petition and hold it in abeyance because Vailes has not shown, and likely cannot show, good cause for why he did not exhaust ground three in the state courts." (Doc. No. 9-1 at 11 (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).) Here, Petitioner has not requested stay and abeyance of the instant Petition and the Court declines to *sua sponte* consider the matter absent a motion.

The Court finds Claim 3 unexhausted, as it is evident Petitioner did not present this claim to the California Supreme Court. That said, a habeas claim may be "technically exhausted" if the petitioner no longer has state court remedies available to him. *See Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") (quoting *Coleman*, 501 U.S. at 732). In this case, because Petitioner's judgment was affirmed over two years ago in December 2020 and because the alleged instances of ineffective assistance of trial counsel occurred during and were thus known at the time of Petitioner's June 10, 2019, sentencing proceedings, it is clear Claim 3 would be untimely if Petitioner now returned to the state supreme court to exhaust this claim. *See Walker*, 562 U.S. at 312–21 (holding California's timeliness requirement, that a petitioner "must seek habeas relief 'without substantial delay, . . . as 'measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim,'" is firmly established and consistently applied) (internal citations omitted). As such, the Court finds Claim 3 is technically exhausted.

A technically exhausted claim is procedurally defaulted in federal court. *O'Sullivan*, 526 U.S. at 848; *see also Cooper v. Neven*, 641 F.3d 322, 328 (9th Cir. 2011) (recognizing "procedural default encompasses claims that were not presented in state court and would now be barred by state procedural rules from being presented at all," including "any unexhausted claims that would be considered untimely if [petitioner] attempted to exhaust them now," and noting such a claim is "technically exhausted but procedurally defaulted") (citing *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) and *Coleman*, 501 U.S. at 732). As discussed above, federal review of a procedurally defaulted claim is ordinarily barred unless a petitioner can show cause and prejudice or that the habeas court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Yet again, addressing the merits clearly appears the more efficient course of

action here because Claim 3 fails under a de novo review.[3] *See Franklin*, 290 F.3d at 1232 (citing *Lambrix*, 520 U.S. at 525); *see also Thompkins*, 560 U.S. at 390.

### B.    Merits

#### 1.    Claim 1

Petitioner asserts his sentence of life in prison without a realistic chance of parole is excessive in violation of his Eighth Amendment right to be free from cruel and unusual punishment, particularly in view of Petitioner's age, maturity, mental capacity, and his mental and emotional state at the time of the offenses. (Doc. No. 1 at 6–10.) Respondent maintains habeas relief is unavailable because Claim 1 is procedurally barred, to the extent Claim 1 relies on state law it is not cognizable on federal habeas review, and in any event the state court rejection of Claim 1 was neither contrary to nor an unreasonable application of clearly established federal law and the state court factual findings were reasonable. (Doc. No. 9-1 at 12–14; *see also* Doc. No. 9 at 3.)

In addition to the procedural bar discussed above, the California Court of Appeal addressed and rejected the claim on the merits to "forestall" and "resolve[]" Petitioner's contention that "counsel's failure to make this argument was constitutionally deficient representation," (*see* Lodgment No. 8 at 17–18), reasoning as follows with respect to both the federal and state constitutions:

B. *Analysis Under the Federal Constitution*

The Eighth Amendment to the federal Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  (U.S. Const., 8th Amend.)  It is firmly

---

[3] Even to the extent Claim 3 remains unexhausted, it does not prohibit the Court from adjudicating it because, for the reasons discussed below, the claim clearly fails on the merits. While habeas relief may not be granted on an unexhausted claim, the Court may deny a claim on the merits despite a petitioner's failure to fully exhaust state judicial remedies. *See* 28 U.S.C. § 2254(b)(2); *Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999); *Cassett*, 406 F.3d at 624 ("[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim.")

established that "'(t)he concept of proportionality is central to the Eighth Amendment . . . .'" (*In re Coley* (2012) 55 Cal.4th 524, 538.)  The United States Supreme Court holds that the Eighth Amendment "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*Graham v. Florida*, *supra*, 560 U.S. at pp. 59-60.)  To decide whether a sentence is grossly disproportionate to a crime, a court "begin(s) by comparing the gravity of the offense and the severity of the sentence. (Citation.)  '(I)n the rare case in which (this) threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  (Citation.)  If this comparative analysis 'validate(s) an initial judgment that (the) sentence is grossly disproportionate,' the sentence is cruel and unusual."  (*Id.* at p. 60.)

In determining the gravity of a defendant's conduct in the face of an Eighth Amendment challenge to a sentence imposed under a recidivist sentencing statute, we consider not only the triggering offense but also the nature and extent of the defendant's criminal history.  (*In re Coley*, 55 Cal.4th at p. 562; accord, *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366.)  In a noncapital context as here, successful Eighth Amendment challenges are "'exceedingly rare.'"  (*Ewing v. California* (2003) 538 U.S. 11, 21.)  In *Coley*, the California Supreme Court affirmed the 25-year-to-life sentence of a person who had suffered many prior serious or violent felony convictions, but was then being prosecuted for failing to update his sex offender registration within the time period required by the relevant statute.  The court concluded there was no Eighth Amendment violation in the Three Strikes sentence imposed on the petitioner: "In light of the particularly heinous nature of petitioner's prior criminal activity . . . , petitioners present offense—reflecting a deliberate decision by petitioner to refuse to comply with an important legal obligation—may properly be viewed as an indicator of potentially significant future dangerousness.  Taking into account both the circumstances of petitioner's triggering offense and petitioner's very serious criminal history, we conclude that the 25-year-to-life sentence imposed upon petitioner does not constitute cruel and unusual punishment in violation of the Eighth Amendment."  (*Coley*, at p. 562; see also *id.* at p. 531; *Mantanez*, at pp. 358-367.)

Here, Vailes suffered three prior robbery convictions under the Three Strikes law (§ 667, subd. (b)-(i)), and while on bail committed three more

robberies with multiple victims, armed with a firearm.  Robbery is both a serious (§ 1192.7, subds. (c)(19), (d)) and violent (§ 667.5, subd. (c)(9)) felony.  His criminal history and record show numerous prior robberies starting as a juvenile; after being charged with 12 counts of robbery, theft and receiving stolen property, the juvenile court found true Vailes had committed a robbery in September 2014, his first strike prior conviction.  Vailes had snatched a cell phone from the victim.  In November 2016, Vailes's juvenile probation was terminated after he was charged with multiple crimes (conspiracy, two robberies, grand theft, burglary, unlawful possession of a firearm without a serial number and receiving stolen property) committed in May and June 2015.  The following month Vailes pleaded guilty to two counts of robbery for which he received a stipulated six-year prison term.  As an adult, he committed the present violent robberies while on bail for the prior offenses.

Vailes's past conduct, which includes repeated, forcible robberies with escalating violence, was precisely the reason for his long sentence.  As this court has recognized: "'The basic fallacy of appellant's argument lies in his failure to acknowledge that he "is not subject to a life sentence merely on the basis of his current offense(s) but on the basis of his recidivist behavior.  Recidivism in the commission of multiple felonies poses a manifest danger to society(,) justifying the imposition of longer sentences for subsequent offenses."'" (*People v. Mantanez*, *supra*, 98 Cal.App.4th at p. 366.)  Taking into account the circumstances of the present offenses and Vailes's serious criminal history, we conclude the 129-year-to-life sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

C. *Analysis Under the California Constitution*

"The California Constitution similarly prohibits cruel or unusual punishment.  (Cal. Const., art. 1, sec. 17.)  A punishment is cruel or unusual only if it 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*In re Lynch* (1972) 8 Cal.3d 410, 424, . . . .)  More specifically, imposition of a life term for even a nonviolent felony committed by a defendant with a history of serious or violent felony convictions does not violate the California Constitution." (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1173, citing *People v. Mantanez*, *supra*, 98 Cal.App.4th at pp. 363-364; see also *People v. Edwards, supra*, 34 Cal.App.5th at p. 191.)

A claim under the state Constitution requires that we "'examine the circumstances of the offense' and the defendant in determining whether 'the penalty imposed is "grossly disproportionate to the defendant's culpability."'" (*People v. Edwards*, supra, 34 Cal.App.5th at p. 191.)  Courts generally (1) examine the nature of the offense and offender, (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction, and (3) measure the punishment to the penalty for the same offense in different jurisdictions.  (*In re Lynch*, *supra*, 8 Cal.3d at pp. 425-427; *People v. Cuevas* (2001) 89 Cal.App.4th 689, 702.)  Vailes, however, appears to concede that the comparative punishment analysis is not required; and he is correct that this portion of the analysis is tempered when a defendant is sentenced under the Three Strikes law.  (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.)  This is so because "it is a defendant's 'recidivism in combination with his current crimes that places him under the (T)hree (S)trikes law.  Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare (defendant's) punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.'"  (*Ibid.*)  Vailes does not undertake such an analysis on appeal, so we focus on the first prong regarding the nature of the offense and the offender.  (Accord, *Cuevas*, *supra*, 89 Cal.App.4th at p. 702; *People v. Ayon* (1996) 46 Cal.App.4th 385, 399 (determinations whether a punishment is cruel or unusual may be made on first prong alone), disapproved on another point in *People v. Deloza* (1998) 18 Cal.4th 585, 593, 600, fn. 10.)

Doing so, we evaluate the totality of the circumstances surrounding Vailes's current offense, along with his personal characteristics, including his age and prior criminality.  (*People v. Lucero* (2000) 23 Cal.4th 692, 739; *People v. Cuevas*, *supra*, 89 Cal.App.4th at p. 702.)  As Vailes acknowledges, he was not a juvenile but a 19-year-old adult when he committed the present offenses.  But he points to mitigating circumstances.  Vailes reported to probation officer that his father was imprisoned, and his counsel in a statement in mitigation stated Vailes experienced abuse and domestic violence at his home.  Pointing to representations in his counsel's sentencing brief, Vailes argues he suffers from anxiety and depression as well as "deficient intellectual functioning" or low IQ, as confirmed in cognitive testing.  He argues he was abusing drugs when his legal troubles emerged.  The record indicates Vailes tested positive for drugs in June 2015 and July 2016.

All of this is countered by the fact Vailes is a repeat offender of serious crimes; he committed the present serious and violent robberies while armed with a firearm, and after much planning and sophistication to lure the victims to locations where they would be vulnerable.  Like in *People v. Cuevas*, *supra*, 89 Cal.App.4th 689, we decline to view Vailes's offenses as nonviolent and not harmful.  (*Id.* at p. 704.)   And like in *Cuevas*, Vailes must be held responsible for his repeat criminal behavior even in view of his family difficulties.  (*Id.* at pp. 704-705 (85-year-to-life sentence for three nonviolent bank robberies not cruel and unusual even where defendant had a difficult family history and long term drug addiction; such addiction is not necessarily mitigating when a defendant with a long-term problem seems unwilling to pursue treatment and despite a difficult upbringing, a defendant is "responsible under the law for his behavior, which he has not seen fit to amend").)  Extended prison terms may be imposed under the Three Strikes law without violating the proscription against cruel and unusual punishment because such defendants are being punished for recidivism in addition to their current offenses.  (See *Ewing v. California*, *supra*, 538 U.S. at pp. 29-30 (upholding under Eighth Amendment proportionality review 25-year-to-life sentence under Three Strikes law when current offense was theft of golf clubs while on parole for serious felonies);  *People v. Cuevas*, *supra*, 89 Cal.App.4th at pp. 702-705; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382-1384 (115 years plus 444 years to life for 15 felony counts, including robberies, mayhem and attempted murder, plus firearm enhancements does not violate article I, section 17 of the California Constitution); *People v. Ayon*, *supra*, 46 Cal.App.4th at pp. 396-401 (240 years to life for seven counts of robbery and two counts of attempted robbery with firearm allegations); *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1134-1136 ("California statutes imposing more severe punishment on habitual criminals have long withstood constitutional challenge"; sentence of 375 years to life plus 53 years for 19 felonies, including assaults and sexual offenses was not cruel and unusual under California Constitution).)

We conclude that under these circumstances, Vailes's lengthy prison term is not disproportionate to his serious and violent crimes and does not run afoul of the California Constitution.  Our conclusion necessarily disposes of Vailes's ineffective assistance of counsel claim.

(*Id.* at 18–23.) The Court will conduct a de novo review of Claim 1 informed by the analysis and reasoning of the state appellate court. *See Thompkins*, 560 U.S. at 390; *Frantz*, 533 F.3d at 738.

As an initial matter with respect to Respondent's contention Claim 1 is not cognizable to the extent Petitioner relies on state law, (*see* Doc. No. 9-1 at 14 n.1), because Petitioner clearly contends in Claim 1 that the trial court's sentencing decision in his case violated his federal constitutional rights under the Eighth Amendment, (*see* Doc. No. 1 at 6), this claim remains cognizable on federal habeas review. However, regardless of Petitioner's reliance on and citation to state decisional authority, this Court's review of Claim 1 is limited to whether Petitioner's sentence violates federal Constitutional guarantees.

The Eighth Amendment's cruel and unusual punishment clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S 277, 284 (1983). Even so, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (quoting *Solem*, 463 U.S. at 288, 303). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

The Supreme Court instructs: "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Helm*, 463 U.S. at 292. "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." *Belgarde v. State of Montana*, 123 F.3d 1210, 1215 (9th Cir. 1997) (quoting *United States v. McDoughtery*, 920 F.2d 569, 576 (9th Cir. 1990)); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("'[O]nly extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment.") (quoting *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992)).

At Petitioner's sentencing hearing, after hearing from both the prosecution and defense, the trial court reasoned as follows:

> Imposition of the sentence and the Three Strikes law in this case, the Court finds is just and warranted.  In fact, the one thing I agree with the People with is that this is the type of case that should be subject to the Three Strikes law for the following reasons:
>
> Prior to these offenses, the defendant committed 10 separate robberies. For his first strike in 2014, the defendant pled guilty to just one of the four robberies he committed at that time as outlined in both the probation report and the People's papers.
>
> For the second and third strikes in 2016, the defendant pled guilty to just two of the six robberies he committed at that time.  Two of those robberies -- two of the six were actually from victims' residences, from their homes. During that time, a search of the defendant's home resulted in the discovery of a 9-millimeter semi-automatic handgun in the room with a filed down serial number.  That's a total of 10 different victims, 10 individual crimes before these armed robberies.
>
> Then while on bail, pending sentencing for his 2016 offenses, the defendant committed these crimes.  Four more robberies, this time armed, with five more victims, not including the children in the car during the first of the series of robberies.  And as I said, at this time a gun was used each time.
>
> Looking at this, the Court thinks it's a miracle that nobody was killed here.  That's a total of 15 victims and nearly 20 crimes committed by the defendant.
>
> There were three separate individual, serious and dangerous crime sprees by the defendant.  But then on top of all that, as was heard on the jail tapes, while the defendant was in custody pending this case, he was seeking an extended magazine for a semi-automatic gun while in custody.  So despite the potential consequences of this case, he didn't stop.

(Doc. Nos. 10-4–10-8 (collectively, "Lodgment No. 3") at 4628–29; *see also* Doc. No. 10-8 at 205–06.)  The trial court also addressed a report submitted by the defense which in the trial court's opinion "ignore[d] the sophistication" of the crime, stating:

This was not the situation where the defendant made an impulsive decision to rob someone with a gun.  Instead, he spent lots of times -- a lot of time finding the victims on the internet through OfferUp, created fake accounts to assist in deception, then he attempted to lure the victims to a location that made it easier for him to rob them.  And he did this three times.  And he did it with a gun.

Then again, when he was in custody and trying to procure an extended magazine for a semi-automatic handgun, he worked with his wife, as the People say, speaking in code on multiple occasions.  It wasn't just one time.  There were multiple phone calls.  He was trying to get this extended magazine.  And he was using the internet to do so, instructing his wife on what to do to find a way to get the magazine from out of state to get around the California gun laws.  These were well-planned, well-reasoned sophisticated crimes.

(Lodgment No. 3 at 4629–30.) The trial court also found "the defendant is an absolute danger to the community" and "as stated by Probation, the defendant has shown no motivation to any type of reform," and concluded: "The Court's sentence in this case is necessary to protect society, punish the defendant, deter others from criminal conduct by demonstrating consequences, and to prevent the defendant committing new crime." (*Id.* at 4631.)

Petitioner argues that his age of 19 at the time of the instant crimes, coupled with his documented intellectual disabilities and drug addiction, and the fact that his actions "are not [as] morally reprehensible as that of a 'learned adult' or a 'murderer,'" render his sentence cruel and unusual in violation of the federal constitution. (Doc. No. 1 at 8–9.) Petitioner argues "the sentencing court did not consider Petitioner's maturity, age, "intellectual capacity" or "mental/emotional state at the time of the offenses," and asserts that without being in a "'drug induced' state," he would not have committed the crimes. (*Id.* at 9.) Petitioner primarily relies on a report generated at the time of his trial to support his contention he was found to be both "juvenile minded" and "intellectually disabled." (*Id.* at 8–9 (citing Doc. No. 1-2 at 1–4).) But contrary to Petitioner's contention the trial court failed to consider these factors, the state record reflects the trial court considered and referenced this very same report in its sentencing decision but found it "ignored[d] the

sophistication" of the crimes. (*See* Lodgment No. 3 at 4629; *see also* Lodgment No. 1 at 400–03.) Moreover, the defense statement in mitigation submitted to the trial court for consideration in sentencing similarly argued Petitioner's age, chaotic upbringing, substance abuse and intellectual disability supported a reduced sentence. (*See* Lodgment No. 1 at 343–47; *see, e.g.*, Lodgment No. 1 at 346 ("Mr. Vailes was the young age of 19 years old at the time of the offenses. He suffers from a low IQ and intellectual disability, as well as substance abuse issues and anxiety and depression.").)

Petitioner also contends his sentence is excessive given he did not intend, attempt, or commit homicide or any other physical harm and still received a sentence equivalent to the death penalty or life in prison without parole. (Doc. No. 1 at 7.) Petitioner points out that the Eighth Amendment prohibits sentences of life without parole for juveniles who commit non-homicide crimes and argues his lengthy sentence for crimes committed at age 19 and while suffering an intellectual disability are the equivalent and similarly offends the federal constitution. (*Id.*)

Indeed, the Supreme Court has repeatedly held that a sentence of life without parole imposed on a juvenile offender violates federal constitutional guarantees. *See Graham v. Florida*, 560 U.S. 48, 82 (2010) ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term."); *see also Miller v. Alabama*, 567 U.S. 460, 465 (2012) ("[M]andatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'")

Petitioner's attempts to draw parallels between his case and the Supreme Court's prohibition on a death sentence or sentences of life without parole for non-homicide offenses for juvenile offenders are unpersuasive. While Petitioner asserts his lengthy sentence is the equivalent to a "death sentence," Petitioner was not charged with or prosecuted for a capital crime, and he was not sentenced to death. Nor is Petitioner a

juvenile offender. While the Court acknowledges Petitioner was under 18 at the time of his *prior* strike offenses that gave rise to the conviction at issue here ultimately constituting his "third strike," Petitioner was 19 and an adult at the time of the instant set of crimes.

With respect to Petitioner's contention that his intellectual disability renders the lengthy indeterminate sentence imposed in this case cruel and unusual, Petitioner offers no authority supporting such an argument. The Court recognizes the Eighth Amendment prohibits imposition of the *death penalty* on both juvenile offenders as well those that are intellectually disabled. *See Roper v. Simmons*, 543 U.S. 551, 571 (2005) ("Retribution is not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity."); *see also Hall v. Florida*, 572 U.S. 701, 708 (2014) ("No legitimate penological purpose is served by executing a person with intellectual disability.") (citing *Atkins v. Virginia*, 536 U.S. 304, 317, 320 (2004)); *see also Moore v. Texas*, 581 U.S. 1, 12 (2017) ("In *Atkins v. Virginia*, we held that the Constitution 'restrict[s] . . . the State's power to take the life of' any intellectually disabled individual.") (quoting *Atkins*, 536 U.S. at 321) (brackets and emphasis in original). Yet again, notwithstanding Petitioner's contention that his indeterminate life sentence is equivalent to a death sentence, it is clearly distinguishable from the death penalty given Petitioner was not charged with or prosecuted for a capital crime, nor was he sentenced to death.

While Petitioner's sentence of 18 years plus 129 years to life is unquestionably severe, the Court also recognizes the instant case was comprised of numerous armed robbery and assault offenses Petitioner committed against at least four separate victims despite Petitioner being a felon and prohibited from possessing a firearm, and Petitioner had committed serious felony prior offenses as well as committing the instant set of offenses while on bail. (*See* Lodgment No. 3 at 4631–34.) Moreover, as the trial court found, the crimes were not of the sort where Petitioner "made an impulsive decision to rob someone with a gun," but were instead "well-planned, well-reasoned sophisticated crimes" in which Petitioner repeatedly searched out potential victims on the internet through the

use of fake accounts and then "attempted to lure the victims to a location that made it easier for him to rob them," which he did on three occasions while armed with a gun. (*Id*. 4629–30.)

In view of the numerous offenses Petitioner committed in the instant case, which were not only committed while Petitioner was out on bail but also demonstrated an escalation in violence in comparison to his prior offenses given Petitioner used a gun during several of the robberies, coupled with Petitioner's repeated recidivism, the Court cannot conclude this is one of the "rare" cases in which the term imposed is "grossly disproportionate" to the crimes. *Rummel*, 445 U.S. at 272; *Solem*, 463 U.S. at 288, 303. Accordingly, Claim 1 fails for lack of merit under a de novo review.

### 2.   Claim 2

Petitioner contends his "de facto" life sentence without the possibility of parole violates equal protection. (Doc. No. 1 at 11–15.) Respondent maintains federal habeas relief is unavailable because Claim 2 is procedurally barred and in any event the state court rejection of Claim 2 was neither contrary to nor an unreasonable application of clearly established federal law and the state court factual findings were reasonable. (Doc. No. 9-1 at 14–17; *see also* Doc. No. 9 at 3.)

After outlining Cal. Penal Code section 3051, one of several laws "that provide a parole eligibility mechanism for juvenile offenders," and noting the statute "excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing" including those sentenced under the Three Strikes law, (*see* Lodgment No. 8 at 7), the California Court of Appeal applied the statute to Petitioner's case, finding:

> Vailes was 19 years old when he committed the offenses.  As a result of his prior strike convictions—robberies committed in 2014 and 2016—he was sentenced under the Three Strikes law to an aggregate indeterminate term of 129 years to life in prison, consisting of the above-summarized indeterminate terms on counts 1, 2, 5 and 6.  Under the version of section 3051 applicable when he committed the offenses, Vailes's sentence makes him statutorily ineligible for a youth offender parole hearing.  (Former § 3051, subd. (h) ("This section shall not apply to cases in which sentencing occurs

1  pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of section
2  667").)

3  (Lodgment No. 8 at 8.)   Then, after discussing the parties' arguments which included
4  imposing the procedural bar discussed above, the California Court of Appeal addressed
5  and rejected on the merits Petitioner's contention his ineligibility for a early youth offender
6  parole hearing violated his equal protection rights, stating it was doing so in order to again
7  resolve any contention counsel was ineffective for failing to raise an equal protection
8  challenge at sentencing, (*see id.* at 10 n.4), the state court reasoned as follows:

9  C. *Standard of Review and Legal Principles*

10         We review Vailes's equal protection challenge de novo.   (*People v.
11  Laird* (2018) 27 Cal.App.5th 458, 469, citing *California Grocers Assn. v. City
12  of Los Angeles* (2011) 52 Cal.4th 177, 208.)   "The California equal protection
13  clause offers substantially similar protection to the federal equal protection
14  clause."  (*People v. Laird*, at p. 469.)   "The concept of equal treatment under
   the laws means that persons similarly situated regarding the legitimate
15  purpose of the law should receive like treatment.  (Citation.)   "'The first
16  prerequisite to a meritorious claim under the equal protection clause is a
   showing that the state has adopted a classification that affects two or more
17  similarly situated groups in an unequal manner."  (Citations.)   This initial
   inquiry is not whether persons are similarly situated for all purposes, but
18  "whether they are similarly situated for purposes of the law challenged."'"
   (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

19
20         Additionally, the Legislature can classify groups as different "'so long
   as a reasonable basis for the distinction exists.'"  (*People v. Laird*, *supra*, 27
21  Cal.App.5th at p. 469.)   "To mount a successful rational basis challenge, a
   party must "'negative every conceivable basis'" that might support the
22  disputed statutory disparity.  (Citations.)   If a plausible basis exists for the
23  disparity, '(e)qual protection analysis does not entitle the judiciary to second-
   guess the wisdom, fairness, or logic of the law.'"  (*People v. Edwards* (2019)
24  34 Cal.App.5th 183, 195-196; see also *People v. Morales*, *supra*, 63 Cal.4th
25  at p. 408; *People v. Turnage* (2012) 55 Cal.4th 62, 74.)

26
27  ///
28  ///

25

D. *Analysis*

Vailes's challenge relies in large part on *People v. Edwards*, *supra*, 34 Cal.App.5th 183, in which the court held section 3051's categorical ineligibility for offenders sentenced under the "One Strike" law had no rational basis and violated such offenders' right to equal protection. *Edwards* reasoned One Strike offenders are similarly situated to youths who commit intentional first degree murder who remain eligible for youth offender parole hearings even though their crimes are regarded as more egregious than the violent sex crimes falling within the One Strike law.  (*Id.* at pp. 195-199.) *Edwards* concluded the carve out in section 3051, subdivision (h) was unconstitutional on its face, and remanded for the trial court to determine whether the defendants there were afforded an adequate opportunity to make a record of information relevant to a future youthful offender parole hearing. (*Id.* at pp. 199-200.)  Vailes asks us to disregard *People v. Wilkes* (2020) 46 Cal.App.5th 1159, which rejected an equal protection challenge by a Third Strike offender like Vailes (*People v. Wilkes*, at pp. 1165-1166) as well as this court's opinion in *People v. Williams* (2020) 47 Cal.App.5th 475, 492-493, review granted July 22, 2020, No. S262229), which likewise disagreed with *Edwards*.[5]

> [5] The California Supreme Court has taken up the equal protection issue raised in *People v. Edwards*, *supra*, 34 Cal.App.5th 183 as to youths convicted and sentenced for sex crimes under the One Strike law.  In *People v. Williams*, *supra*, 47 Cal.App.5th 475, review granted, a panel of this court, applying a rational basis test, rejected a One Strike defendant's equal protection challenge based on *Edwards*.  (*Id.* at pp. 490, 493, rev. gr.)  Our colleagues held "the threat of recidivism by violent sexual offenders—as demonstrated by the Legislature's enactment of several comprehensive statutory schemes to curb such recidivism among such offenders—provides a rational basis for the Legislature's decision to exclude one-strikers from the reach of section 3051." (*Williams*, at p. 493, rev. gr.)

In *People v. Wilkes*, *supra*, 46 Cal.App.5th 1159, the First District, Division Five Court of Appeal rejected a similar equal protection challenge by a defendant sentenced under the Three Strikes law.  There, the jury found the defendant guilty of, among other offenses, attempted murder and found true an allegation it was committed willfully, deliberately and with premeditation.  (*Id.* at pp. 1163-1164.)   The defendant admitted prior

26

conviction allegations and the court sentenced him under the Three Strikes law to a prison term of 59 years four months to life.  (*Id.* at p. 1164.)  On appeal, the defendant, who was 25 years old when he committed the offenses, argued the differential treatment of Three Strikes youth offenders violated his right to equal protection; that he was similarly situated to youth offenders who were not sentenced pursuant to the Three Strikes law, and there was no rational basis for the different treatment.  (*Id.* at pp. 1164-1165.)

The *Wilkes* court disagreed: "Numerous courts have rejected equal protection challenges to the differential treatment of Three Strikes offenders, concluding that such offenders are not similarly situated to non-recidivist offenders and/or that a rational basis exists to treat them differently.  As one such court reasoned: 'A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system . . . . It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not.'  (Citations.)  (¶)  The reasoning of these cases applies here.  The purpose of section 3051 is 'to give youthful offenders "a meaningful opportunity to obtain release" after they have served at least 15, 20, or 25 years in prison (§ 3051, subd. (e)) and made "'a showing of rehabilitation and maturity'"(') and 'to account for neuroscience research that the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s.' (Citation.)  Assuming a Three Strikes youth offender is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' (citation)— presents too great a risk of recidivism to allow the possibility of early parole." (*People v. Wilkes*, *supra*, 46 Cal.App.5th at pp. 1165-1166, citing *People v. Cooper* (1996) 43 Cal.App.4th 815, 829; *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 ("The system of imposing greater punishment on all persons who commit a felony-grade crime after having committed one or more serious or violent felonies in the past, is rationally related to the legitimate public objective of discouraging recidivism"); *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 ("It is clear the Legislature intended to set appellant and other recidivists with prior 'strike' convictions apart from first time offenders and those with less serious criminal histories; it is equally clear it did so with a legitimate objective in mind"); *People v. McCain* (1995) 36 Cal.App.4th 817, 820 ("The Legislature has seen fit to increase the severity

of punishment for recidivists who have committed serious or violent felonies and who again commit felony offenses. . . . (W)e cannot say harsher treatment for such recidivists is irrational or arbitrary such that it denies them equal protection under the law").)

*Wilkes* pointed out that a distinguishing characteristic of Three Strikes offenders, unlike the defendant sentenced for sex offenses under the One Strike law in *People v. Edwards*, *supra*, 34 Cal.App.5th 183, is that they are not being sentenced for a first-time offense. (*People v. Wilkes*, *supra*, 46 Cal.App.5th at p. 1166 ("'The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses,' such that "'a first-time offense can result in one of two heightened sentences"'").) "Thus, the ample authority rejecting equal protection challenges from Three Strikes offenders did not apply in *Edwards*," where the court "took pains to 'note that criminal history plays no role in defining a One Strike crime' and that '[t]he problem in this case is' the categorical exclusion of 'an entire class of youthful offenders convicted of a crime short of homicide . . . , regardless of criminal history . . . .'" (*People v. Wilkes*, at pp. 1166-1167, quoting *Edwards*, at p. 199.)

We follow *Wilkes* to reject Vailes's equal protection arguments. We cannot agree that Vailes—who has committed repeat serious felonies (see § 1192.7, subd. (c)(19))—is similarly situated to other youth offenders without strike priors but with sentences over 25 years. Further, we see "a rational relationship between the disparity of treatment and some legitimate governmental purpose." (*Heller v. Doe* (1993) 509 U.S. 312, 320; see also *People v. Turnage*, *supra*, 55 Cal.4th at p. 74 (equal protection is denied only where there is no rational relationship between the disparity of treatment and some legitimate governmental purpose).) "'(W)hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. (Citation.) 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"' (citation), or 'because it may be "to some extent both underinclusive and overinclusive"' (citation)." (*Johnson v. Department of Justice (*2015) 60 Cal.4th 871, 887.) As stated, the law will "survive() constitutional scrutiny as long as there is '"any reasonably conceivable state of facts that could provide a rational basis for"'" treating the youthful offenders differently. (*People v. Turnage*, at p. 74.)

We hold that in terms of equal protection of the law, the exclusion of Third Strikers from early parole consideration does not run afoul of the

holdings in *Graham v. Florida*, *supra*, 560 U.S. 48, *Miller v. Alabama*, *supra*, 567 U.S. 460 and *People v. Caballero* (2012) 55 Cal.4th 262, which curtailed imposition of life without parole sentences for juvenile offenders on Eighth Amendment grounds.[6]  The Legislature plainly accounted for these decisions when it enacted section 3051 with its exclusions.  (See *People v. Franklin*, *supra*, 63 Cal.4th at p. 268 (the Legislature enacted sections 3051 and 4801 "to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*"); see Legis. Counsel's Dig., Sen Bill No. 260, Stats. 2013, ch. 312, § 4 ("This bill would exempt from its provisions inmates who were sentenced pursuant to the Three Strikes law").)  "At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 887.) We agree the Legislature's treatment of youths sentenced under the Three Strikes law like Vailes so as to exclude them from the benefit of early parole consideration is rationally related to the legitimate governmental objective of discouraging recidivism.  (*People v. Kilborn*, *supra*, 41 Cal.App.4th at p. 1332.)  We cannot say in view of these legislative concerns that the different treatment here so lacks rationality that it constitutes a denial of equal protection.  (*Ibid.*)

> [6] Under *Graham v. Florida*, *supra* 560 U.S. 48, the Eighth Amendment forbids a juvenile who commits an offense other than a homicide from being sentenced to LWOP.  (*Id.* at p. 74; *In re Bolton* (2019) 40 Cal.App.5th 611, 617.)  *Miller v. Alabama*, *supra*, 567 U.S. 460 forbids the automatic imposition of LWOP on juveniles in homicide cases.  (*Id.* at p. 465; *In re Bolton*, at p. 617.)

(Lodgment No. 8 at 11–17.)  The Court will conduct a de novo review of Claim 2 informed by the analysis and reasoning of the state court. *See Thompkins*, 560 U.S. at 390; *Frantz*, 533 F.3d at 738.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To prove uneven application of a law, "a mere demonstration of inequality is not enough; the Constitution does not require identical treatment. There

must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a 'settled rule that the Fourteenth Amendment guarantees equal laws, not equal results.'" *McQueary v. Blodgett*, 924 F.3d 829, 835 (9th Cir. 1991) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979)).

Petitioner asserts his federal equal protection rights were violated because defendants "similarly situated" or those who committed worse crimes than his were given an opportunity to rejoin society through parole eligibility while he was not and Petitioner points out that although he "never inflicted or attempted to inflict injury or death during his crimes, he is sentenced to death, as he will surely die" before serving his sentenced term. (Doc. No. 1 at 11–12.) Petitioner references several cases in which he asserts a defendant received a lesser term for more "serious/worse[]" crimes, some of which involved involving "injury and death," while Petitioner received more time even though none of the victims in his cases were physically harmed and two of his victims purportedly requested his release. (*Id.* at 13.)

Petitioner first fails to show several of the cited cases involve individuals "similarly situated" to himself, as Petitioner is a repeat offender who was sentenced under California's Three Strikes law, while several of the defendants he attempts to draw parallels with were not. For instance, Petitioner cites a case in which he asserts "the defendant received 21 years for manslaughter," (Doc. No. 1 at 12), but further examination reveals that defendant was not sentenced under the Three Strikes law. *See Turner v. McDowell*, No.: 21cv0432-WQH (KSC), 2021 WL 5178440 (S.D. Cal. Nov. 8, 2021). Petitioner contends another defendant was convicted of multiple robbery and kidnapping offenses and was sentenced to 20 years and 4 months and acknowledges without context that the "trial court struck prior prison term," (Doc. No. 1 at 12), while the case reflects the parties agreed to strike one of the strikes which resulted in that defendant not being sentenced under the Three Strikes law. *See Robinson v. Yates*, No. SACV 06–1055 DDP(JC), 2010 WL 7372318 (C.D. Cal. Jan. 8, 2010). Finally, Petitioner offers a case in which a defendant was convicted of first-degree murder, evading an officer causing serious bodily injury or death,

residential burglary, and vehicle theft with several enhancements and was sentenced to 26 years to life, (*see* Doc. No. 1 at 13), but review of that case also reflects the sentence was not imposed under the Three Strikes law. *See Russell v. Cash*, No. 11cv2288–H (DHB), 2012 WL 5463694 (S.D. Cal. Aug. 23, 2012). Equal protection only requires defendants "similarly situated" to each other be treated alike. *See City of Cleburne*, 473 U.S. at 439.

The remaining cases Petitioner references, (*see* Doc. No. 1 at 12–13), while all involving sentences imposed under the Three Strikes law, each involve defendants who, like Petitioner, were sentenced to indeterminate life terms due to various offenses committed after two prior strike offenses. *See Stroud v. Neuschmid*, No. 19-CV-924-JLS(WVG), 2019 WL 5550255 (S.D. Cal. Oct. 28, 2019) (defendant with two prior strike convictions who was convicted of carjacking, robbery, kidnapping reckless evading of police and misdemeanor sexual battery sentenced under Three Strikes law to a term of 38 years to life); *see* Order, *Loza v. Sherman*, No. 14cv01969-JAH-RBB (S.D. Cal. filed Nov. 2, 2015), ECF No. 11 at 2 (defendant with prior strike convictions who was convicted of assault with a firearm, shooting at an occupied vehicle, two counts of unlawfully possessing a firearm, and firearm and gang enhancements sentenced to 30 years to life plus 13 years and 4 months in prison); *Montgomery v. Cate*, No. 12cv248 AJB (DHB), 2012 WL 5382213 (S.D. Cal. Nov. 1, 2012) (defendant with two prior strikes from juvenile robbery convictions which qualified as strikes was convicted of two counts of conspiracy to commit robbery, one count of robbery, one count of attempted robbery, possession of a firearm by a felon and firearm and gang enhancements and was sentenced under the Three Strikes law to 50 years to life plus 11 years in prison, which was later reduced to 25 years to life plus 11 years).

Given Petitioner committed a third strike offense after two prior felony strike convictions suffered as a juvenile and similarly to the above defendants, received an indeterminate life term, these cases do not demonstrate Petitioner was treated unequally under the Three Strikes law such that his treatment could potentially constitute a violation of equal protection. Given Petitioner's prior strike offenses and the instant set of offenses

Petitioner committed to constitute his third strike differs from the crimes committed in the cited cases, it rationally follows that Petitioner's treatment could not and would not be identical to the offenders he attempts to draw comparisons with and in any event, "identical treatment" is not required, and "equal results" are not guaranteed. *See McQueary*, 924 F.3d at 835.

Nor does Petitioner demonstrate that his exclusion from the possibility of parole consideration under Cal. Penal Code § 3051 violates federal constitutional guarantees. The state appellate court plainly noted the statute providing for parole hearings for youth offenders specifically excluded individuals who had been sentenced under the Three Strikes law. (*See* Lodgment No. 8 at 8) ("Under the version of section 3051 applicable when he committed the offenses, Vailes's sentence makes him statutorily ineligible for a youth offender parole hearing. (Former § 3051, subd. (h) ('This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of section 667'.))).) This Court agrees with the state court's conclusion that "the Legislature's treatment of youths sentenced under the Three Strikes law like Vailes so as to exclude them from the benefit of early parole consideration is rationally related to the legitimate governmental objective of discouraging recidivism." (*See id.* at 16); *see also City of Cleburne*, 473 U.S. at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.")

Finally, for the reasons discussed previously with respect to Claim 1, Petitioner's continued reliance on *Graham*, (*see* Doc. No. 1 at 14), is untenable, as in that case the Supreme Court held a sentence of life without parole imposed on a juvenile for a non-homicide offense was violative of the Eighth Amendment. *See Graham*, 560 U.S. at 82. As previously discussed, Petitioner was not a juvenile at the time of the instant crimes and Petitioner's challenge concerns whether his sentence violates equal protection guarantees under the Fourteenth Amendment, not the prohibition against cruel and unusual punishment under the Eighth Amendment. Petitioner also again contends that a sentence

which amounts to "de facto 'life without parole'" is "death in prison," (*see* Doc. No. 1 at 14), and again references that he is "intellectually disabled" and was 19 at the time of the offenses in contending his sentence is violative of the constitution, (*see id.* at 14), but for the reasons previously discussed, this argument is unpersuasive. Thus, Petitioner fails to demonstrate his sentence violates federal constitutional guarantees against cruel and unusual punishment under the Eighth Amendment. (*See supra* Claim 1.) Nor does Petitioner offer any authority supporting a contention that the equal protection clause of the Fourteenth Amendment somehow counsels a different outcome, as it is evident an adult recidivist Third Strike offender (albeit a younger adult who was 19 at the time of the crimes) sentenced to a lengthy indeterminate term is not "similarly situated" to an individual who was under 18 and therefore a juvenile in the eyes of the law at the time of the crimes such that they should be treated alike in sentencing. *See City of Cleburne,* 473 U.S. at 439.

Accordingly, Petitioner's Claim 2 contention that his sentence violates his federal constitution right to equal protection fails for lack of merit under a de novo review.

### 3.    Claim 3

Petitioner contends defense counsel provided ineffective assistance of counsel at sentencing for failing to argue numerous mitigating factors and that Petitioner's excessive sentence violated equal protection and constituted cruel and unusual punishment in violation of the state and federal constitutions. (Doc. No. 1 at 12, 16–19.) Respondent maintains federal habeas relief is unavailable because Claim 3 is unexhausted and procedurally defaulted due to technical exhaustion but contends it may be denied as meritless notwithstanding the failure to exhaust. (Doc. No. 9-1 at 17–19; *see also* Doc. No. 9 at 2–3.)

Again, Petitioner did not raise this claim in the California Supreme Court. While this Claim is unexhausted and procedurally defaulted due to technical exhaustion, as discussed

above, the exhaustion status of the claim is of no consequence to the outcome because Petitioner's claim is without merit under a de novo review.[4]

Under the clearly established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), "a defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (citing *Strickland*, 466 U.S. at 687). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. To demonstrate prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Petitioner contends trial counsel "clearly thought the sentence would be too excessive," given counsel filed a motion to strike a prior conviction and asserts counsel's failure to object to Petitioner's sentence as cruel and unusual punishment therefore appears

---

[4] To the extent Petitioner raised portions of this claim in the state appellate court, specifically his allegation that trial counsel's failure to argue his sentence constituted cruel and unusual punishment and violated equal protection violated his right to the effective assistance of counsel, the Court's de novo review is again informed by the state court's analysis and reasoning with respect to those contentions. *See Thompkins*, 560 U.S. at 390; *Frantz*, 533 F.3d at 738. As noted above, Petitioner's ineffective assistance of counsel contentions were addressed and disposed of by the state court within their discussion of Petitioner's equal protection and cruel and unusual punishment arguments. (*See* Lodgment No. 8 at 10 and n.4, 17–18, 23.)

"intentional" and "conscious," and contends it resulted in prejudice because raising such an argument may have resulted in a lesser sentence which would have allowed Petitioner a reasonable opportunity for parole. (Doc. No. 1 at 17–18.) Petitioner additionally contends defense counsel "failed to argue any of the numerous mitigating factors," again noting his mental health issues, age, diminished intellectual capacity, and substance use. (*Id.* at 18–19.) Again, the Court must "indulge a strong presumption" trial counsel acted "within the wide range of reasonable professional assistance" in deciding how to present Petitioner's case, and such a presumption applies to the entirety of trial proceedings, including sentencing. *See Strickland*, 466 U.S. at 689.

Petitioner is correct that his trial counsel moved to strike the two prior strike convictions, arguing it would allow the trial court to impose "a lengthy sentence," while still providing Petitioner "the opportunity to get out under the Youthful Offender program that is set up by the legislature." (Lodgment No. 3 at 4607.) Counsel contended: "I think that the spirit of the Three Strikes law was one such that you're supposed to have these three separate strikes before you get kicked out of the game. And Mr. Vailes really hasn't had that. Mr. Vailes hasn't had the guidance that he needed as a juvenile. He has a history of juvenile crimes, but he never received any type of adequate treatment for, both his intellectual disability as well as rehabilitation for the behavioral issues that he had." (*Id.*) Counsel also pointed out that while Petitioner committed the crimes in the instant case when he was 19, his prior crimes resulting in convictions were committed when he was under 18 and a report the defense submitted indicated brain development was not fully completed until at least age 25. (*Id.* at 4607–08.)

Counsel agreed the instant set of crimes were "scary" and "horrific" but argued: "I think it's important to note, too, that nobody was injured. I know that that sounds silly, but no shots were fired. There's no evidence that the guns were loaded." (*Id.* at 4608.) Counsel asked the trial court to strike both of Petitioner's prior strike convictions, which would result in a total sentence of 40 years, noting the first two series of crimes were committed before Petitioner was an adult and before he understood the import of a strike, which

Petitioner now understood. (*See id* at 4609–10.) While acknowledging the law as written, counsel argued: "I think the spirit should be or is such that it's for adult offenders to understand that they get three offenses or three chances, Three Strikes." (*Id.* at 4611.)

First, the record fails to support and in fact disproves Petitioner's contention trial counsel failed to argue the mitigating factors Petitioner now identifies, as counsel clearly argued to the trial court that Petitioner's age, intellectual capacity, substance abuse and behavioral issues warranted a lesser sentence. (*See, e.g.*, *id.* at 4607.) As previously discussed, the defense additionally submitted both a psychological report for the trial court's consideration which discussed many of these same mitigating factors, (*see id.* at 4629; Lodgment No. 1 at 400–03), as well as a separate defense statement in mitigation, (*see* Lodgment No. 1 at 343–47; *see, e.g.*, *id.* at 346 ("Mr. Vailes was the young age of 19 years old at the time of the offenses. He suffers from a low IQ and intellectual disability, as well as substance abuse issues and anxiety and depression.")).

Second, on this record, it is apparent defense counsel made a considered and well-supported argument that Petitioner's young age of 19, coupled with the fact that Petitioner's prior strike offenses were committed when he was under 18 and a juvenile, warranted striking the prior strikes to result in a lesser, but still substantial sentence. That counsel did not additionally raise the cruel and unusual punishment argument Petitioner now advances does not compel a conclusion that trial counsel's performance was ineffective, as "the relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998). Here, Petitioner fails to provide anything to rebut a presumption counsel's decisions with respect to how to best present Petitioner's case at sentencing do not fall within the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *see also Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) ("A disagreement with counsel's tactical decisions does not prove that the representation was constitutionally deficient.") (citing *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981) (per curiam)); *see also Strickland*, 466 U.S. at 689 ("It is all too

tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.")

Furthermore, even were Petitioner somehow able to satisfy the performance prong and show that trial counsel acted deficiently in failing to raise the equal protection and cruel and unusual punishment arguments, his claim of ineffective assistance of counsel would also fail for lack of prejudice. *See Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel.") (citing *Strickland*, 466 U.S. at 687). This is because is it clear both the equal protection and cruel and unusual punishment argument Petitioner now offers to contend his sentence is excessive in violation of the constitution lacks merit. (*See supra* Claims 1–2.) As such, the Court finds no reasonable likelihood of a different result even had counsel raised those arguments at sentencing. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *see also Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.")

Because Petitioner not only fails to show trial counsel acted deficiently in failing to argue mitigation or raise an equal protection and/or cruel and unusual punishment argument at sentencing, but also fails to demonstrate any reasonable likelihood of prejudice given those arguments clearly lack merit, his claim of ineffective assistance of counsel fails. *Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel.") (citing *Strickland*, 466 U.S. at 687).  Accordingly, federal habeas relief is not warranted on Claim 3 under a de novo review.

///

///

## VI.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. § 2254; Rule 11(a). "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This requirement includes a district court's decision based on procedural grounds. *See Buck v. Davis*, 137 S. Ct. 759, 777 (2017) ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'") (quoting *Slack*, 529 U.S. at 484).

The Court finds issuing a certificate of appealability is not appropriate in this case as reasonable jurists would not find debatable or incorrect the Court's conclusion that: (1) regardless of the outcome of a procedural default analysis, habeas relief is not available on Claims 1–2 because the claims fail under a de novo review and (2) regardless of the exhaustion status of Claim 3, habeas relief is unavailable because the claim is without merit under a de novo review. Nor does the Court find any of the issues presented in Claims 1–3 deserve encouragement to proceed further.

## VII.   CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated:  September 6, 2023

Hon. Anthony J. Battaglia
United States District Judge